2026 IL App (1st) 250474-U

FIRST DIVISION
August 3, 2026

No. 1-25-0474

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 11 CR 03136 |
| KENNETH HATCHER, | ) ) | Honorable Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:    We affirm in part and reverse in part the circuit court's second-stage dismissal of defendant's postconviction petitions. We affirm dismissal of defendant's eighth-amendment, proportionate-penalties, and unreasonable-assistance-of-postconviction-counsel claims. We reverse dismissal of defendant's ineffective-assistance-of-trial-counsel claim because defendant made a substantial showing that counsel's advice regarding the sentencing consequences of first- and second-degree murder was legally incorrect and prejudiced his decision to forgo a second-degree-murder instruction. We remand that claim for third-stage evidentiary proceedings.

¶ 2    Following a jury trial, defendant Kenneth Hatcher was convicted of first-degree murder

(720 ILCS 5/9-1(a)(1) (West Supp. 2009)) and three counts of aggravated battery with a firearm

(720 ILCS 5/12-4.2(a) (West 2010)) and sentenced to an aggregate 86 years' imprisonment. This

court affirmed defendant's conviction on direct appeal, *People v. Hatcher*, 2016 IL App (1st) 130138-U, ¶ 96.

¶ 3 In 2017, defendant filed *pro se* initial and supplemental petitions, and in 2019, a successive petition (collectively petitions) for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West Supp. 2017)). The circuit court dismissed these petitions. On appeal of the dismissal, we reversed and remanded the case for second-stage proceedings. *People v. Hatcher*, Nos. 1-17-2572 and 1-19-2022, Consolidated, ¶ 16 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 4 On remand, the State filed a motion to dismiss the petitions, which the circuit court granted. On appeal, defendant contends that trial counsel rendered ineffective assistance by advising him that there was no significant sentencing difference between first-degree murder and second-degree murder, which caused him to forgo a second-degree-murder instruction. He further argues that his sentence violates the proportionate penalties clause and the eighth amendment, or alternatively that postconviction counsel provided unreasonable assistance by failing to amend his petitions to better present those sentencing claims. For the following reasons, we affirm in part, reverse in part, and remand defendant's ineffective-assistance-of-trial-counsel claim for third-stage evidentiary proceedings.

¶ 5                                  BACKGROUND

¶ 6 This court summarized the trial evidence in its order on direct appeal and defendant's petitions in its summary order dismissing his prior appeal. We restate the proceedings as relevant.

¶ 7 Jacqueline Johnson testified that she went to a corner store near her home on October 26, 2010, where she encountered defendant, Michael Hatcher, and Sereeta Bradley. Defendant "hit

on" Johnson, who rebuffed his advances. He called Johnson a "b***[,]" and she left the store, defendant briefly following. Upon Johnson's return home, she told her children, Michael Martin and Jamica Martin (Jamica), what had happened. Jamica and Michael Martin walked in the direction of the corner store to "confront" defendant and later returned to the front of Johnson's home with several others, including Jeremy Harris and Sharonik Haynes.

¶ 8    The Hatchers and Bradley appeared and approached the group. Michael Martin asked Michael Hatcher if he had called Johnson a "b***," and Jamica picked up "half a broomstick," pointing it at defendant before Johnson took it and threw it away. Then defendant withdrew a firearm from under his jacket and fired into the crowd.

¶ 9    Jamica, Michael Martin, and Haynes testified largely consistently with Johnson's description of the shooting, except Jamica said she put the broomstick down when Johnson asked her to, and Michael Martin said defendant fired at him first before shooting into the crowd. On cross-examination, Michael Martin elaborated that the crowd in front of Johnson's house consisted of approximately 15 to 20 people. Haynes added on cross-examination that Michael Martin approached the Hatchers and Bradley outside of Johnson's house and that Jamica already held the broomstick at that point.

¶ 10    Javon Weaver and Reginald Ellis testified for the defense that Michael Martin told them shortly before the shooting that he intended to fight the person who had insulted Johnson. On cross-examination, Weaver added that, during the confrontation in front of Johnson's house, Jamica was close enough to hit defendant with the broomstick. Ellis stated that he heard a gunshot before he saw defendant shoot but explained on cross that was because defendant held the firearm low when firing the first shots.

¶ 11     Defendant testified that he was 20 years old on October 26, 2010, and was staying in Chicago with his uncle, Michael Hatcher, and his uncle's girlfriend, Bradley. The Hatchers and Bradley were in the corner store when Johnson entered and accused defendant of calling her a "b***," which he denied doing. Johnson replied that she had "something" for him and left.

¶ 12     The Hatchers and Bradley went to the nearby bus stop where Michael Martin, Jamica, and a man with dreads approached them. Jamica held a stick, which she swung at defendant, and Michael Martin accused Michael Hatcher of insulting Johnson. A bus arrived, but the driver refused to let the Hatchers and Bradley board due to the commotion. Defendant grabbed Michael Hatcher, telling him to "leave it alone," and it was "not worth it."

¶ 13     The Hatchers and Bradley hurried away through an alley, and defendant heard Michael Martin yell, "On the G, you're gonna need a gun or something to make it back through this mother f*** alive." Defendant understood "on the G" as a reference to the Gangster Disciples and had observed what he believed to be a gang-related tattoo on Michael Martin's arm; Bradley testified that Michael Martin said he was a "GD." In the alley, defendant also heard voices say, "[W]e got them, as soon as them MF-ers come out ***, we gonna get down on them." Michael Hatcher then drew a firearm. Defendant grabbed Michael Hatcher's arm, and Bradley took the weapon. Defendant took the firearm from her and put the weapon by his hip. The Hatchers and Bradley exited the alley and walked towards their home.

¶ 14     As the Hatchers and Bradley neared their residence, Michael Martin and others blocked their path. Michael Martin and Michael Hatcher argued, and defendant saw the man with dreads in the crowd. Defendant observed the man with dreads reach to his hip as if to draw a firearm. Then Johnson identified defendant as the one who had insulted her; Jamica advanced, holding a stick in a batting position; Michael Martin assumed a fighting stance; and defendant heard a

gunshot from where the man with dreads stood—all in the span of approximately five seconds. Bradley also testified that she heard a gunshot in the distance.

¶ 15    At that point, feeling his "life was in danger," defendant drew the firearm and started shooting. His "only intent was to make sure that [he] got out of the situation unharmed and alive." Jamica sustained a gunshot wound in the knee, Michael Martin in the thigh, Haynes in the back, and Harris in the back of the head, which caused his death. Defendant ran.

¶ 16    After the close of evidence, the circuit court held a jury instructions conference in which the court inquired whether the defense would request second-degree-murder instructions. The court stated that it would give a second-degree-murder instruction upon request. Trial counsel said no and stated that he had discussed the risks and benefits of forgoing such an instruction with defendant. The court confirmed with defendant that he had discussed the matter with his attorneys and had agreed "to ask for a not-guilty based on self-defense" and forgo a second-degree-murder instruction.

¶ 17    Trial counsel said the decision was "primarily based upon conversations" with defendant "and the way in which [defendant] believed that the evidence came in" during trial, stating that it was defendant's decision. The circuit court admonished defendant that he was "rolling the dice *** putting all [his] eggs *** in the self-defense/not-guilty basket." The court asked whether defendant understood that the minimum sentence for first-degree murder was 45 years and would run consecutively to the other offenses. Defendant responded, "Yes." The court asked whether he was "willing to risk that[,]" and defendant replied, "Yes." We note that, while the court recited the minimum sentence for first-degree murder, it did not likewise state the minimum sentence for second-degree murder or otherwise compare the sentences for first-degree and second-degree murder.

¶ 18    After a break, the circuit court further discussed a second-degree-murder instruction with trial counsel in defendant's presence. In that colloquy, counsel expressed a mistaken belief that there was no significant difference in the length of the sentence defendant would serve if he was convicted of second-degree murder rather than first-degree murder. The court reinforced counsel's misunderstanding in the presence of defendant:

"[TRIAL COUNSEL]: *** With regards to requesting the lesser second degree ***, based upon my conversation with [defendant], we're still not requesting it. And I did have an opportunity to discuss with him the sentencing, and because there is not a big disparity in the sentencing whether or not he's found guilty of either first degree or second degree, *** that's part of the basis in which he's not requesting a second degree instruction.

THE COURT: And that would be the case in this particular case because not only is he charged with first degree, he's charged with several more counts of aggravated battery with a firearm. So even if he were convicted of a straight second degree murder, if he were also to be convicted of agg batt with firearms, those are Class 'X', they'd be consecutive to the second degree murder in any event. So time-wise it doesn't present as it would in the usual first degree murder case with one count where second degree murder is significantly less than what he'd be facing now."

¶ 19    The circuit court did not correct trial counsel's mistaken belief that there was not a significant difference in the amount of time defendant would serve between first- and second-degree-murder convictions but rather confirmed his mistaken belief. Counsel proceeded with his

strategy of not requesting a second degree murder instruction, which was formed under a misunderstanding of the law.

¶ 20    After closing arguments, the jury found defendant guilty of first-degree murder, in which he had personally discharged a firearm proximately causing death, and three counts of aggravated battery with a firearm. The circuit court denied defendant's subsequent motion for a new trial. After a hearing, the circuit court sentenced defendant to 50 years' imprisonment for first-degree murder and 12 years on each aggravated battery count—all to run consecutively for an aggregate 86-year sentence. The court denied defendant's motion to reconsider his sentence. This court affirmed defendant's conviction on direct appeal. *Hatcher*, 2016 IL App (1st) 130138-U, ¶ 96.

¶ 21    On June 28, 2017, defendant filed an initial *pro se* postconviction petition for relief under the Act (initial petition).

¶ 22    On August 15, 2017, defendant filed a *pro se* supplemental petition for postconviction relief (supplemental petition) and requested that the initial and supplemental petitions be considered as "one petition." In relevant part, defendant claimed ineffective assistance of trial counsel, asserting that counsel refused to request a second-degree-murder instruction and "threatened" to withdraw if defendant would not cooperate. Counsel allegedly instructed defendant to say it was his decision if asked by the court. Defendant attached an affidavit to this effect to his supplemental petition, further averring that counsel told him that there "wouldn't be a difference in time" between first- and second-degree-murder sentences and not to "give them another charge to find [him] guilty on."

¶ 23    The circuit court dismissed defendant's initial petition on September 7, 2017, without addressing the supplemental petition. Defendant appealed.

¶ 24    Defendant filed a *pro se* motion for leave to file a successive petition for postconviction relief (successive petition) on April 1, 2019. Defendant argued that his 86-year sentence violated the proportionate penalties clause of the Illinois Constitution, Ill. Const. 1970, Art. I, § 11. He contended that the evolving science of young-adult brain development examined in *Miller v. Alabama*, 567 U.S. 460 (2012), should be applied to him because he was 20 years old at the time of the offense. The successive petition discussed and included materials concerning this emerging area of neuroscience and law.

¶ 25    The circuit court denied leave to file a successive petition, which defendant also appealed.

¶ 26    This court consolidated defendant's appeals and determined the circuit court had never reviewed or ruled on defendant's supplement to his initial petition alleging ineffective assistance of trial counsel. Therefore, we remanded the case for a second-stage review of the petitions. *Hatcher*, Nos. 1-17-2572 and 1-19-2022, Consolidated, ¶ 15 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 27    The circuit court appointed postconviction counsel for defendant on remand. Counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) stating that, after consulting with defendant, reviewing the record, and examining the petitions, he would not supplement the petitions because defendant's "filing provide[d] an adequate basis for presentation of [his] claims."

¶ 28    The State moved to dismiss the petitions. Postconviction counsel filed a response. The motion was originally set for argument on December 11, 2024. However, the circuit court continued the hearing when postconviction counsel stated that after "looking through [his]

materials[,]" he "need[ed] to follow up with [defendant] regarding an affidavit." The record on appeal does not reflect that counsel filed an additional affidavit.

¶ 29    After a hearing, the circuit court granted the State's motion. The court reasoned that the record positively rebutted defendant's ineffective-assistance-of-counsel claim premised on trial counsel's failure to request a second-degree-murder instruction. The court also stated that defendant had failed to demonstrate how *Miller* or the evolving neuroscience of young adults applied to him.

¶ 30    Defendant timely appealed.

¶ 31                                   ANALYSIS

¶ 32    The Act provides a three-stage process to collaterally challenge criminal convictions on constitutional grounds. *E.g.*, *People v. Domagala*, 2013 IL 113688, ¶ 32. In the first stage, a circuit court dismisses a petition if it is "frivolous or is patently without merit." § 122-2.1(a)(2) (West 2016). If the court does not dismiss the petition within 90 days of filing or determines that the petition states an arguable claim of a constitutional violation, the petition proceeds to the second stage, at which point counsel may be appointed and the State may file a motion to dismiss or an answer. *People v. Carroll*, 2026 IL 131360, ¶ 54. A petition and any supporting documentation must make a substantial showing of a constitutional violation to survive a motion to dismiss and advance to the third stage for an evidentiary hearing. *Id.*

¶ 33    When deciding a motion to dismiss, the circuit court takes as true all well-pled facts that are not positively rebutted by the trial record. *People v. Bridges*, 2025 IL App (1st) 241180, ¶ 15. The record positively rebuts new evidence where it is "clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *People v. Robinson*, 2020 IL 123849,

¶ 60. We review a circuit court's second-stage dismissal of a petition *de novo*. *People v. Smith*, 2026 IL App (1st) 231635, ¶ 13.

¶ 34    First, defendant argues that his petitions made a substantial showing that trial counsel rendered ineffective assistance when making him forgo a second-degree-murder instruction. The United States and Illinois Constitutions provide the right to effective assistance of counsel at trial and on direct appeal. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Illinois courts apply the "familiar standard" of *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether counsel's assistance was effective. *People v. Jones*, 2023 IL 127810, ¶ 51. A defendant must demonstrate that his counsel's performance was deficient and that such deficiency prejudiced him. *Carroll*, 2026 IL 131360, ¶ 67. Namely, he must establish both that "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 35    Defendant's supplemental petition stated that he wanted an instruction for second-degree murder, but his trial counsel threatened to withdraw from the case if defendant insisted upon the instruction. Counsel told him that a second-degree-murder conviction "wouldn't be a difference in time," and "don't give them another charge to find [him] guilty on." Counsel told him to say "yes," when the circuit court asked him about the decision. Defendant stated in his petition that his counsel's representations caused him to forgo a second-degree-murder instruction.

¶ 36    Defendant's ineffective-assistance claim is best understood as a challenge to counsel's strategy, not as a claim that counsel usurped defendant's personal right to choose a second-

degree-murder instruction. A defendant does not have a personal right to request a second-degree-murder instruction; the decision generally belongs to counsel as a matter of trial strategy. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 78. But strategic choices are not insulated from review when they are based on a misapprehension of law. *People v. Neasom*, 2017 IL App (1st) 143875, ¶ 43. The question, therefore, is whether defendant made a substantial showing that counsel's all-or-nothing strategy was based on an incorrect legal assumption: that there was no meaningful sentencing difference between first-degree and second-degree murder.

¶ 37    Defendant has made that showing. If convicted of first-degree murder with the firearm enhancement and the three aggravated-battery counts, defendant faced a minimum aggregate sentence of 63 years: 45 years for murder (730 ILCS 5/5-4.5-20(a) (West 2010), 5-8-1(a)(1)(d)(iii) (Pub. Act 96-1200, § 5 (eff. July 22, 2010) (amending 730 ILCS 5/5-8-1)) plus three consecutive 6-year terms (720 ILCS 5/12-4.2(a)(1), (b); 730 ILCS 5/5-4.5-25(a) (West 2010)). By contrast, a second-degree-murder conviction would have carried a minimum aggregate sentence of 22 years: 4 years for second-degree murder (720 ILCS 5/9-2(d) (West 2010); 730 ILCS 5/5-4.5-30(a) (West 2010)) plus the same three consecutive 6-year aggravated-battery terms. The difference was therefore at least 41 years, and defendant further alleged that accurate advice would have led him to request a second-degree-murder instruction.

¶ 38    The State does not dispute that the alleged sentencing advice was incorrect; it argues instead that the record positively rebuts defendant's claim. We disagree. The circuit court admonished defendant about the minimum first-degree-murder sentence, but it did not inform him of the second-degree-murder range or otherwise correct trial counsel's statement that the sentencing difference was insignificant. Because the admonition did not cure the alleged

misinformation, the record does not positively rebut defendant's claim at the second stage. See *People v. Rouse*, 2022 IL App (1st) 210761, ¶ 37.

¶ 39    Defendant also made a substantial showing of prejudice. The circuit court stated that it would have given a second-degree-murder instruction if requested, and the trial evidence supplied a basis for imperfect self-defense.

¶ 40    Second-degree murder is available where the elements for first-degree murder have been satisfied, but a statutory mitigating factor is present—such as an unreasonable belief in the need for self-defense. *People v. Castejon*, 2025 IL App (1st) 221918, ¶ 16. To establish imperfect self-defense, a defendant must demonstrate by a preponderance of the evidence that (1) unlawful force (2) was threatened against the defendant, (3) who was not the aggressor; (4) the danger of harm was imminent; and (5) the defendant actually and subjectively believed that a danger existed requiring the use of force. *People v. Mujkovic*, 2022 IL App (1st) 200717, ¶ 26.

¶ 41    Defendant testified that Michael Martin, Jamica, and a man with dreads sought out the Hatchers and Bradley for a verbal altercation. Defendant saw what he believed to be a gang-related tattoo on Michael Martin, who subsequently referenced the Gangster Disciples and threatened that they would need a firearm to return to their block "alive." Defendant heard voices say they would attack him and his companions, and a crowd of 15 to 20 hostile people blocked their path. Haynes testified that Michael Martin and Jamica, holding a stick, approached the Hatchers and Bradley outside Johnson's house. In the span of five seconds after Johnson indicated that defendant was the one who had insulted her, Jamica advanced on defendant wielding a stick, Michael Martin assumed a fighting stance, and defendant heard a shot in the crowd after seeing the man with dreads reach toward his hip as if to draw a firearm. Defendant

stated that he fired because he believed his "life was in danger" and his only intention was to escape "the situation unharmed and alive."

¶ 42 Taken as true at this stage, that evidence creates a reasonable probability that a properly instructed jury could have found defendant guilty of second-degree murder rather than first-degree murder by finding that he actually, but unreasonably, believed deadly force was necessary. Because defendant has made a substantial showing of a violation of his constitutional right to effective assistance of counsel, we reverse the dismissal of this claim and remand for third-stage evidentiary proceedings pursuant to the Act.

¶ 43 Next, defendant argues that his petitions made a substantial showing that his aggregate 86-year sentence violated the United States Constitution's eighth amendment and the proportionate penalties clause of the Illinois Constitution. Alternatively, he contends that his postconviction counsel did not provide reasonable assistance for failing to amend his petitions to adequately present his proportionate-penalties-clause claim.

¶ 44 The eighth amendment prohibits "cruel and unusual" punishment. U.S. Const., amend. VIII. The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates this clause, when, *inter alia*, it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*).

¶ 45 While the United States and Illinois Constitutions provide the right to effective assistance of counsel at trial and on direct appeal, the Act only requires that postconviction counsel give a "reasonable level of assistance" at the second stage. *People v. Williams*, 2025 IL 129718, ¶ 43. Reasonable assistance consists of (1) consulting with a defendant to ascertain his claims of

constitutional deprivation, (2) examining the trial record, and (3) amending a *pro se* petition as "necessary for adequate presentation of" defendant's claims. Ill. S. Ct. R. 651(c). Filing a Rule 651(c) certificate, as counsel did here, creates a rebuttable presumption of reasonable assistance absent an affirmative showing otherwise in the record. *People v. Agee*, 2023 IL 128413, ¶ 43. We review the reasonability of counsel's assistance *de novo*. *Williams*, 2025 IL 129718, ¶ 41.

¶ 46    After the United States Supreme Court held that the eighth amendment prohibits mandatory life sentences for minors convicted of first-degree murder in *Miller*, 567 U.S. 460 at 489, Illinois courts have permitted young adults to contest their life sentences under the proportionate penalties clause. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 46-55 (gathering cases). To bring an as-applied challenge that a defendant's sentence is disproportionate based on his being 20 years old or younger at the time of his offense, he may rely on evolving neuroscience and societal standards to demonstrate that his "specific characteristics were so like those of a juvenile that imposition of a life sentence" violates the proportionate penalties clause. *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25.

¶ 47    Defendant argues in his reply brief that his petitions substantially showed that that his *de facto* life sentence violates the eighth amendment and the proportionate penalties clause.

¶ 48    As a preliminary matter, we note that defendant argued for the first time in reply that his petitions substantially showed that his sentence violated the eighth amendment and proportionate penalties clause. Generally, points not argued in an appellant's opening brief are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Regardless, his petitions do not make the requisite showing that his sentence is unconstitutionally cruel and unusual or disproportionate. *Miller* does not apply to young adults for eighth-amendment purposes. *People v. Moore*, 2023 IL 126461, ¶ 38. As to the proportionate penalties clause, although defendant's successive petition discusses and

includes evidence concerning the evolving neuroscience of young adults, none of his petitions establish how this science applies to him specifically. *Daniels*, 2020 IL App (1st) 171738, ¶ 25

¶ 49    Neither has defendant rebutted the presumption that postconviction counsel provided reasonable assistance. He has not identified anything in the record to affirmatively show counsel's failure to amend the petitions was unreasonable.

¶ 50    Defendant alternatively contends that postconviction counsel provided unreasonable assistance by failing to amend the petitions with additional evidence of young-adult brain development and its application to him. He argues counsel should have obtained studies, affidavits from people who knew him when he was young, and expert evidence linking his characteristics to juvenile-like immaturity.

¶ 51    That argument does not rebut the presumption created by postconviction counsel's Rule 651(c) certificate. Rule 651(c) requires counsel to consult with defendant, examine the record, and make amendments necessary to adequately present a defendant's claims; it does not require counsel to independently search for speculative, extra-record evidence or unidentified experts. See *People v. Williams*, 186 Ill. 2d 55, 61-62 (1999). Defendant identifies no record evidence showing that the proposed affidavits or expert testimony existed, that counsel ignored known available support, or that amendment was necessary to preserve a legally sufficient claim. The absence of such an affirmative showing leaves the Rule 651(c) presumption intact. Nothing in the record demonstrates that the evidence that petitioner alleges counsel failed to gather existed, and "[i]t is presumed from the lack of an amendment that there were none to be made." *People v. Huff*, 2024 IL 128492, ¶ 24.

¶ 52    Nor does the record establish that postconviction counsel made zero effort to obtain any evidence. In fact, counsel postponed argument on the motion to dismiss "to follow up with

[defendant] regarding an affidavit." *Cf. People v. Johnson*, 154 Ill. 2d 227, 241 (the record "unequivocally" showed that counsel "made no effort" to investigate the defendant's claims or obtain affidavits from witnesses identified in the defendant's petition).

¶ 53     We therefore affirm the portion of the circuit court's order dismissing defendant's proportionate-penalties-clause challenge.

¶ 54                                    CONCLUSION

¶ 55     For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County and remand for third-stage evidentiary proceedings.

¶ 56     Affirmed in part, reversed in part, and remanded.